UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**ESROM DEMEKE**

**CIVIL ACTION
NO. 19-114-BAJ-RLB**

**VERSUS**

**BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AND A&M COLLEGE, ET AL.**

---

## JOINT STATUS REPORT

### A. JURISDICTION

What is the basis for the jurisdiction of the Court?

**Plaintiff:**

Plaintiff's claims involve questions of federal law, original jurisdiction exists under Title II of the Americans with Disabilities Act of 1990, as amended (the "ADA"), 42 U.S.C. § 12131, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq.*; the Fourteenth Amendment, 42 U.S.C. § 1983; and Title VII of the Civil Rights Act of 1963.

**Defendants – LSU Employees[1]:**

1. **Sovereign Immunity**

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardina Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Under Fed. R. Civ. P., Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.

---

[1] F. King Alexander, Chelsie Bickel, Stacia Haynie, Kurt Keppler, Matt Lee, Jonathan Sanders, Dawn Sousa-Hearn, Mayank Tyagi and Judy Wornat, in their individual and official capacities, (collectively "LSU Employees").

1

3d 1006, 1008 (5th Cir. 1998) (internal citations omitted). Plaintiff's claims against the LSU Employees are barred by sovereign immunity. Sovereign immunity operates as "a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pacific Railroad Co. v. La. Public Service Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). A suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Sovereign immunity extends to state officials sued in official capacities because such suits are actually against the state. *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143 (5th Cir. 2001).

State employees and officials are not 'persons' subject to liability and cannot be sued for monetary damages under 42 U.S.C. §1983, *Perez v. Region 20 Education Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). Longstanding jurisprudence on the applicability of sovereign immunity to state officials makes the 42 U.S.C. §1983 claim clearly unfounded entitling the LSU Employees, named in their official capacities to dismissal of the 42 U.S.C. §1983 claims.

All claims for monetary damages against the LSU employees in their official capacities must be dismissed with prejudice at Plaintiff's cost.

### 2. Federal Question

Plaintiff asserts claims under both federal and state laws. If all of Plaintiff's federal law claims are dismissed, this Court would lack jurisdiction over the state law claims.

## Defendant - LSU Board[2]:

### 1. Sovereign Immunity

The Eleventh Amendment bars an action for monetary damages by a private individual in federal court against a sovereign state and its agencies and officials. *Seminole Tribe of Florida v.*

---

[2] Board of Supervisors of Louisiana State University and A&M College

*Florida, et al.*, 517 U.S. 44 (1996); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000). The Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal court by her own citizens as well as citizens of other States." *Edelman v. Jordan*, 415 U.S. 651, 662-63, (1974) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890). The scope of the Eleventh Amendment extends to actions against state agencies or entities classified as "arms of the state." *Regents of the University of Ca. v. John Doe*, 519 U.S. 425, 429 (1997).

Applying *Richardson v. Southern University*, 118 F. 3d 450, 453 (5th Cir. 1997), the Fifth Circuit held that the board of supervisors for Southern University, a public university, is an arm of the State of Louisiana and, as such, are entitled to Eleventh Amendment Immunity." Likewise, in *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363-365 (2001) the Supreme Court held that the University of Alabama Board Of Trustees was protected under the Eleventh Amendment from suit under the ADA as it is an entity of the State of Alabama.

Plaintiff brings these claims as a private individual against a Board of Supervisors as an entity, Plaintiff's ADA claims are barred by the Eleventh Amendment, and this Court lacks subject matter jurisdiction on the ADA claims. The LSU Board is entitled to sovereign immunity with respect to Plaintiff's federal claims therefore, this Honorable Court lack jurisdiction over Plaintiff's Claims.

### 2. Federal Question

Plaintiff asserts claims under both federal and state laws. If all of Plaintiff's federal law claims are dismissed, this Court would lack jurisdiction over any remaining state law claims.

## B. BRIEF EXPLANATION OF THE CASE

1. **Plaintiff's claims:**

Since Fall 2016, Plaintiff, a qualified student with disabilities, has been and continue to be irreparably harmed by LSU's denial of his civil right to reasonable accommodations[3], a right protected by Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131-12134 ("Title II" and "ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and their implementing regulations. 28 C.F.R. pts. 35, 41, and 42, subpart F; 34 C.F.R. pt. 104, subpart E (postsecondary education).

Furthermore, Plaintiff claims that defendants 1) Ms. Rachel L. Champagne ("Ms. Champagne"), 2) Ms. Dawn Sousa-Hearn ("Ms. Sousa-Hearn"), and 3) Dr. Mayank Tyagi ("Dr Tyagi") maliciously retaliated against him for speaking up against their discriminatory practices based on race, national origin, and disabilities and for filing complaints with the U.S. Department of Education, Office for Civil Rights ("OCR"), the U. S. Department of Justice, and the university. And, defendants 4) Dr Jonathan Sanders ("Dr Sanders") and 5) Ms. Chelsie Bickel ("Ms. Bickel") conspired with Ms. Champagne and Ms. Sousa-Hearn to violate Plaintiff's Civil and Constitutional Rights by falsifying a decision made by the Dean of Students on an appeal. And, defendants 6) Dr. F. King Alexander ("Dr. Alexander"), 7) Dr. Stacia Haynie ("Dr Haynie")[4], 8) Dr. Matt Lee ("Dr Lee"), 9) Dr. Kurt Keppler ("Dr. Keppler"), and 10) Dr. Judy Wornat ("Dr. Wornat"), (hereinafter collectively referred as (the "Administrator Defendants") had actual knowledge of violations of plaintiff's rights by

---

[3] Plaintiff is using the term "accommodation" throughout this Status Report and the Complaint as synonymous with the modification of policies, practices, and procedures; the provision of auxiliary aids and services; academic adjustments and modifications to the environment intended to remove barriers to equivalent access.

[4] Plaintiff is only suing Dr. Haynie in her official capacity as the Provost of LSU-Baton Rouge. Plaintiff is suing the Office of the Provost not Dr. Haynie in her individual capacity.

defendants because Plaintiff reported it to all Administrator Defendants (except Dr Haynie) by writing to them regarding the discriminatory practices of defendants 1 through 5. However, the Administrator Defendants choose to acquiesce in the violation. And made no attempt to respond to Plaintiff's pleas for investigation as stated in LSU's Permanent Memorandum – 55 (PM-55), which states the Complaint Procedure of LSU as follows:

II. COMPLAINT PROCEDURE

This complaint procedure applies to all campuses and shall be included in each campus policy:

1. Any member of the University community who believes that he or she has been subjected to discrimination and/or harassment in violation of this policy has a right to report the conduct to any University official, supervisor, the campus Office of Human Resource Management, or individual responsible for the campus Human Resources function. No student or employee is required to report or make a complaint of discrimination and/or harassment to the person who is engaging in the problematic conduct.

2. Any individual who receives a complaint or becomes aware of a possible violation of this policy will immediately notify the Campus Office of Human Resource Management or individual responsible for the campus Human Resources function to obtain advice and assistance in responding to the complaint.

3. Each campus policy will designate an individual or individuals to investigate the complaint. This may be an individual in the campus office of Human Resource Management. If the designee(s) is not an individual in the Office of Human Resource Management, that office shall assist the designee in investigating the complaint.

4. The complainant and the individual who is the subject of the complaint will be notified about its resolution. Information obtained regarding the complaint will be treated as confidentially as possible with only those with a need to know being informed of the complaint. 5. The individual responsible for investigating the complaint, in conjunction with the Office of Human Resource Management, shall report his/her findings and recommendations to the President (in case of complaints arising in the System Office), Chancellor, or his designee. 6. Substantiated violations of this memorandum and/or campus policy will result in appropriate discipline or corrective action.

5

## 2. <u>Defendants - LSU Employees' claims:</u>

The LSU Employees deny any violation of Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131-12134 ("Title II" and "ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and their implementing regulations, 28 C.F.R. pts. 35, 41, and 42, subpart F; 34 C.F.R. pt. 104, subpart E (postsecondary education), PM-55 and any other violation alleged in the Complaint (Doc. 1).

### A. Qualified Immunity Bars Claims

Qualified immunity protects public employees and officials from individual capacity suits under 42 U.S.C. §1983 for performance of "discretionary duties" when their actions are reasonable regarding the rights allegedly violated. *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). "Several federal courts have unwaveringly determined that Louisiana's public universities, including LSU, are to be treated as arms of the State of Louisiana." *Jarvis v. Louisiana State Univ. Health Science Ctr.*, 2007 WL 2993862, p. 3 (E.D. La. 2007). Since Plaintiff recognizes the individual defendants are LSU officials, damage claims against these officials must be dismissed.

The qualified immunity inquiry comprises two questions: (1) "whether the defendant violated the plaintiff's constitutional rights" and (2) whether that right was clearly established. Courts have discretion to skip the first inquiry and resolve a case solely on clearly established grounds."[5] Before the U.S. Fifth Circuit Court of Appeals issued its 2018 opinion in *Sims v. City of Madisonville*, the law was unsettled whether a non-decision-maker defendant can be held liable for a claim pursuant to 42 U.S.C. §1983.[6] A "clearly established" law must so clearly and unambiguously prohibit an official's conduct that "every reasonable official would have

---

[5] *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 240 (2009)).

[6] *Buchanan v. Alexander*, 919 F. 3d 847, (5th Cir. 2019).
*Sims*, 894 F.3d at 638, 640; *Culbertson v. Lykos*, 790 F.3d 608, 627 (5th Cir. 2015).

6

understood that what he is doing violates that right" and existing precedent placed the question beyond debate. *Ashcroft v. Al-Kidd,* 563 U.S. 731, 741 (2011).

Plaintiff failed to allege any actions or inactions of the LSU Employees other than actions taken in their official capacities. In the event this Honorable Court determines sufficient facts were pled against the LSU Employees in their individual capacities, the LSU Employees are entitled to qualified immunity. The allegations make it clear that the LSU Employees were not the final decision-makers. Plaintiff alleges that he appealed decisions of the LSU Employees to others.

Accordingly, the LSU Employees their individual capacities are entitled to dismissal of Plaintiff's claims at Plaintiff's cost for failure to state a claim upon which relief can be granted.

### B. Statute of Limitations Bars Claims

Plaintiff's allegations arise solely out of an incident which occurred in the fall of 2017 which he acknowledges in paragraph 28 of the Complaint, he became aware of on December 11, 2017. The statute of limitations for claims under 42 U.S.C. §1983 is one year. Violations which are discrete acts cannot be aggregated for a "continuing violation" argument. *Van Heerden v. Board of Sup'rs of Louisiana State Univ.,* 2011 WL 5008410, p. 8 (M.D. La. 2011) citing *O'Connor v. City of Newark,* 440 F. 3de 125 (3d Cir. 2006). The instant suit was filed more than a year later on February 22, 2019.

Accordingly, the Plaintiff's claims are barred by the one year statute of limitations applicable to discrimination claims and must be dismissed with prejudice at Plaintiff's cost.

### C. Louisiana Administrative Procedures Act Inapplicable

Plaintiff alleges he was not provided adequate notice or opportunity to respond to alleged violation of the Code of Student Conduct in violation of the Louisiana Administrative Procedures

Act ("LAPA").[7] While it is doubtful the Louisiana Administrative Procedures Act is applicable to determinations made under the Code of Student Conduct, if the LAPA applies, La. R.S. 49:964 requires proceedings to review an adjudication to, "be instituted by filing a petition in the district court of the parish in which the agency is located within thirty days after the transmittal of notice of the final decision by the agency or, if a rehearing is requested, within thirty days after the decision thereon." Paragraphs 39-45 of the Complaint reference the Code of Student Conduct violation at issue.

Plaintiff alleges the decision was made on July 10, 2018, appealed to a Hearing Panel and then upheld by the Dean of Students on August 8, 2018. There is no allegation that a timely appeal of the determination was filed in the district court within thirty days. Any appeal of the determination made on August 8, 2018 would be preempted or prescribed after 30 days from transmittal of the notice to Plaintiff.

Accordingly, the claim pursuant to the Louisiana Administrative Procedures act are barred by the time limitations set forth in La. R.S. 49:964 must be dismissed with prejudice at Plaintiff's cost.

**D. No Breach of Contract**

Plaintiff alleges the failure to follow LSU's own policies and procedures, particularly the Code of Student Conduct constitutes a breach of contract. Louisiana law is well-established that university policies and procedures such as those found in the Code of Student Conduct do not create binding contractual obligations. This Court has specifically referred to the "Louisiana jurisprudence on the non-contractual nature of faculty handbooks and university policies" in *van Heerden v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 2011 WL 5008410 at *13

---

[7] Doc. 1, para. 86

8

(M.D. La. Oct. 20, 2011). Handbooks, catalogs, and codes of conduct do not create binding contractual obligations because they are unilateral expressions subject to change at any time. The publishing of the policies and procedures does not evidence any meeting of the minds between the LSU Defendants and Plaintiff. Louisiana jurisprudence holds employee handbooks and policies do not create contractual rights with university employees. *Stanton v. Tulane University of Louisiana,* 2000-0403 (La. App. 4th Cir. 1/10/01), 777 So.2d 1242 and *Marson v. Northwestern State University,* 607 So.2d 1093 (La. App. 3d Cir. 1992).

Courts in other jurisdictions have concluded a university's undergraduate catalog does not create a binding contract with the student. *Carr v. Board of Regents,* 249 Fed. Appx. 146 (11th Cir. 2007); *Doe v. Marymount University,* 297 F. Supp. 3d 573 (E.D. Va. 2018); *Tran v. State System of Higher Educ.,* 986 A.2d 179 (Pa. Cmwlth. 2009).

### 3. **Defendants - LSU Board claims:**

The LSU Board of Supervisors denies any violation of Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131-12134 ("Title II" and "ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and their implementing regulations. 28 C.F.R. pts. 35, 41, and 42, subpart F; 34 C.F.R. pt. 104, subpart E (postsecondary education), PM-55 and any other violation alleged in the Complaint (Doc. 1).

The LSU Board adopts the claims of LSU Employees regarding Qualified Immunity, Statute of Limitations, Louisiana Administrative Procedures Act and Breach of Contract set forth above.

### C. PENDING MOTIONS

List any pending motion(s), the date filed, and the basis of the motion(s):

**Plaintiff:**

On July 25, 2019, Plaintiff will be filing a Motion for Extension of Time to Oppose the Motion of Defendants' to Dismiss the Complaint Pursuant to Rule 12(b), filed with this Court by Defendants on July 5, 2019. Plaintiff is filing a motion for extension of time (first request) because, as a *pro se* litigant with no legal background, his knowledge is very limited and he needs to do substantial amount of research in order to write a motion that actually makes sense to this Honorable Court opposing the Defendants' motion.

**Defendants - LSU Employees:**

Motion to Dismiss Pursuant to Rule 12(b)(6) filed on July 5, 2019, (Doc. 19).

**Defendant -LSU Board:**

Motion to Dismiss Pursuant to Rule 12(b) filed on July 5, 2019, (Doc. 20).

### D. ISSUES

List the principal legal issues involved and indicate whether or not any of those issues are in dispute:

**Plaintiff:**

1) Whether Plaintiff was subjected to discrimination because of his disabilities based on Title II and Section 504.

2) Whether Plaintiff was subjected to discrimination because of his race and national origin.

3) Whether Defendants are liable for retaliation.

4) Whether Defendants are liable for violating Plaintiff's rights under the Fourteenth Amendment (Equal Protection).

5) What damages are Plaintiff entitled to receive.

6) Whether Defendants are liable for intentional infliction of emotional distress.

7) Whether the Administrator Defendants are liable for their silent acceptance of the discrimination.

8) Whether the Administrator Defendants are liable for their deliberate indifference to the consequences, established and maintained a policy that discriminates against minority qualified disabled students by 1) selectively choosing students and offering to pay for their psychological screening at LSU's Psychological Center in order to approve their accommodations request, and 2) refusing the same opportunity to the Plaintiff, and requesting him to undergo expensive outside screening procedure that would cost him more than $2000.00.

9) Whether Defendants violated Plaintiff's Constitutional rights.

**Defendants LSU Employees and LSU Board:**

1. Whether plaintiff stated any claims against the LSU Board upon which relief can be granted.

2. Whether Plaintiff stated any claims upon which relief can be granted against:

   a. The LSU Board:

   b. F. King Alexander, individually or in his official capacity;

   c. Chelsie Bickel, individually or in his official capacity;

   d. Stacia Haynie, in her official capacity;

   e. Kurt Keppler, individually or in his official capacity;

   f. Matt Lee, individually or in his official capacity;

  g. Dawn Sousa-Hearn, individually or in her official capacity:

  h. Jonathan Sanders, individually or in his official capacity;

  i. Mayank Tyagi, individually or in his official capacity;

  j. Judy Wornat, individually or in his official capacity;

3. Whether Plaintiff's claims are barred by sovereign immunity.

4. Whether Plaintiff's claims are barred by qualified immunity.

5. Whether Plaintiff's claims are barred by the statute of limitations.

6. Whether the Louisiana Administrative Procedures Act is applicable to the Hearing Panel.

7. Whether LSU's policies create contractual rights.

### E. DAMAGES

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

1. Plaintiff's calculation of damages:

    Plaintiff is willing to accept the Jury's or the Magistrate Judge's calculation of damages.

2. Defendant's calculation of offset and/or plaintiff's damages:

    **Defendants LSU Employees and LSU Board:**

    LSU Employees and LSU Board dispute Plaintiff is entitled to monetary damages. If monetary damages are awarded, monetary damages should be reduced by any delinquent fees and tuition, interest and the costs incurred for collection.

3. Counterclaimant/cross claimant/third party's calculation of damages: Not applicable.

### F. SERVICE:

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or

venue:

**Plaintiff:**

One of the Defendants, Ms. Rachel L. Champagne has not been served by the United States Marshall Services as of July 25, 2019.

**G.    DISCOVERY**

1. Initial Disclosures:

    A. Have the initial disclosures required under FRCP 26(a)(1) been completed?

    [ ] YES [X] NO

    In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the scheduling conference, unless a party objects to initial disclosures during the FRCP 26(f) conference and states the objection below.

    B. Do any parties object to initial disclosures?

    [X] YES [ ] NO

    For any party who answered *yes*, please explain your reasons for objecting.

    Defendants, LSU Employees and LSU Board, object to initial disclosures prior to disposition of the pending Motions to Dismiss (Docs. 19 and 20) to avoid disclosure of information related to dismissed claims.

2. Briefly describe any discovery that has been completed or is in progress:

    By plaintiff(s): None.

    By defendants LSU Employees: None.

    By defendants LSU Board: None.

3. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

Plaintiff, LSU Employees and LSU Board agree that plaintiff's medical and academic records should be subject to a protective order.

4. Discovery from experts:

Identify the subject matter(s) as to which expert testimony will be offered:

By plaintiff(s): Plaintiff's primary care physician regarding medical diagnosis and treatment.

By defendants - LSU Employees and LSU Board: Psychologist or psychiatrist to offer expert testimony of the disabilities claimed by plaintiff and the appropriateness of accommodations requested by Plaintiff.

**H.   PROPOSED SCHEDULING ORDER**

1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline: Parties propose exchanging initial disclosures within 21 days of ruling on pending Motions to Dismiss (Docs. 19 and 20).

2. Recommended deadlines to join other parties or to amend the pleadings: 30 days after Initial Disclosures.

3. Filing all discovery motions and completing all discovery except experts: <u>May 7, 2020</u>.

4. Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

   Plaintiff(s): <u>January 8, 2020</u>

   Defendant(s): February 7, 2020

5. Exchange of expert reports:

   Plaintiff(s): March 20, 2020

   Defendant(s): March 24, 2020

6  Completion of discovery from experts: April 20, 2020

7. Filing dispositive motions and Daubert motions: May 29, 2020

8. All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.1 The parties should not provide any proposed dates for these remaining deadlines.

   a. Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

   b. Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

   c. Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

   d. Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

   e. Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

   f. Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

I. **TRIAL**

1. Has a demand for trial by jury been made?

    [X] YES [ ] NO

2. Estimate the number of days that trial will require. <u>5</u>

J. **OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

[X] YES [ ] NO

i. If the answer is *yes*, please explain: Pending motions.

ii. If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**

[ ] YES [X] NO

K. **SETTLEMENT**

1. Please set forth what efforts, if any, the parties have made to settle this case to date.

On July 24, 2019 Plaintiff and counsel for LSU Employees and LSU Board discussed terms upon which Plaintiff would be willing to settle this case. Counsel for LSU Employees and LSU Board will discuss the possibility of a resolution upon terms which Plaintiff may be willing to settle this case. Due to the nature of the settlement request researching the possibility of a settlement in this case will take several weeks.

2. Do the parties wish to have a settlement conference:

[X] YES [ ] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial? After disposition of the pending motions.

L. **CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge.

Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

Plaintiff:

[X] YES [ ] NO

Defendants:
[ ] YES [X] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the attached form to indicate your consent.**

Report dated: July 25, 2019

_____
Esrom Demeke, Pro Se Plaintiff
5959 Burbank Dr. 1624
Baton Rouge, LA 70820
edemek1@lsu.edu
(571)-306-9137

17

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on <u>July 25th, 2019</u>, a copy of the foregoing <u>Joint Status Report</u> was manually filed with the Clerk of the Court.

Notice of this filing will be forwarded by mail and e-mail to all parties listed as follows:

1) Sheri M. Morris, Counsel for LSU
8480 Bluebonnet Blvd., Suite F
Baton Rouge, LA 70810
Office: (225) 421-1800
Mobile: (225) 229-0803

Respectfully submitted this 25th day of <u>July</u>, 2019.

By:

_____

ESROM DEMEK, *Pro Se* Litigant
5959 Burbank Dr. Unit 1624
Baton Rouge, LA 70820
phone: 571-306-9137 | email: edemek1@lsu.edu