UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA



| | |
|---|---|
| ESROM DEMEKE, | ) |
| *Plaintiff,* | ) Case Number: |
| | ) 19-114-BAJ-RLB |
| v. | ) |
| | ) Judge |
| BOARD OF SUPERVISORS OF LOUISIANA | ) Brian A. Jackson |
| STATE UNIVERSITY, and A&M COLLEGE, | ) |
| *ET AL.* | ) Mag. Judge |
| | ) Richard L. Bourgeois, JR. |
| *Defendants.* | ) |

**PLAINTIFF's MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff submits the following brief in opposition to Defendants' Motion to Dismiss the Complaint. For reasons set forth in this opposing memorandum, Plaintiff respectfully requests this Honorable Court deny Defendants' Motion to Dismiss in its entirety.

**INTRODUCTION**

Plaintiff, in his Complaint (Doc. 1) submitted to this Court on Feb 22, 2019, alleges against Defendants, violations of Title II of the Americans with Disabilities Act of 1990, as amended (the "ADA"), 42 U.S.C. § 12131, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq.*; the Fourteenth Amendment, 42 U.S.C. § 1983; and Title VII of the Civil Rights Act of 1963. And supplemental state law violation claims.

## ISSUES TO BE RULED UPON BY THE COURT

Defendants argue that this Court should dismiss the Complaint in its entirety for the following reasons: (A) "[w]ith respect to the Board, Plaintiff has not pled sufficient facts to state a claim upon which relief can be granted"; (B) "Plaintiff brings these claims as a private individual against a Board of Supervisors as an entity, Plaintiff's ADA claims are barred by the Eleventh Amendment, and this Court lacks subject matter jurisdiction on ADA claims"; and (C) " The statute of limitation for claims under 42 U.S.C. § 1983 is one year.

## LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P 12(b)(1) "addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [plaintiff's] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). A court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted). On the other hand, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "tests the legal sufficiency of a complaint." *Jones v. HCA*, 16 F. Supp. 3d 622, 628 (E.D. Va. 2014). When evaluating motions to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. City. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The issue for the court is "not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims:" *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In addition, when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts hold *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).

Plaintiff disagrees with Defendants' contention that the Complaint (Doc.1) lacks sufficient facts to state a claim. As required by rule 12(b)(6), the complaint contains a short and plain statement showing the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). Plaintiff has satisfied this requirement in the Complaint by alleging a list of specific conditions that " unable to equally and fully benefit from services and benefits provided to other LSU students " (Doc. 1, parag 62). The Complaint, specifically alleges that LSU Board and LSU employees engaged in violations of (1) Title II of the ADA, by implementing practices, policies and procedures that have subjected Plaintiff to discrimination based on his disability; (2) Section 504 of the Rehabilitation Act by failing to provide reasonable accommodations through its denial of Plaintiff's request for an effective and reasonable accommodation and modifications of policy, and by implementing discriminatory procedural barriers and burdensome documentation requirements (Doc. 1 paras 54 -65).

Furthermore, Plaintiff asserts that LSU's documentation requirement "negatively and disproportionately impacts qualified disabled students in violation of the equal protection clause." LSU selectively chooses qualified disabled students and pays for their evaluation expenses to verify eligibility for accommodation (Doc. 1, parag 64). LSU denied the same benefit as provided to other disabled qualified LSU students.

Plaintiff made several requests to be evaluated if LSU covers the expenses, however, LSU response through the Associate Director of Disability Services was that "we don't do that."

## ARGUMENT

### I. *Title II of the ADA validly abrogates state's sovereign immunity, This Honorable Court has jurisdiction over Plaintiff's Title II and Section 504 claims*

Defendants argue the state has sovereign immunity as to the plaintiff's ADA claim, therefore, the court is without subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(1), a motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject

matter jurisdiction. In addition, Defendants argue the Eleventh Amendment bars private actions against a state entity for monetary damage.

The Americans with Disabilities Act (ADA) has four separate titles: (1) Title I covers employment discrimination, 42 U.S.C. §§ 12111-12117; (2)Title II covers discrimination by government entities, Id. §§ 12131-12165; (3) Title III covers discrimination by places of public accommodation, Id. §§ 12181-12189, and (4)Title IV covers miscellaneous provisions, Id. § § 12201-12213.

Title II specifies that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The term "public entity" means any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any cummuter authority." 42 U.S.C. § 12131(1).

Defendants argue that "[p]laintiff brings these claims as a private individual against a Board of Supervisors as an entity, Plaintiff's ADA Claims are barred by the Eleventh Amendment, and this Court lacks subject matter jurisdiction on the ADA claims" In supporting this argument, Defendants rely on *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

A) *Appling Garrett for a Title II case is misplaced because Garrett is a Title I case, and in United States v. Georgia, 546 U.S. 151 (2006),* in unanimous decision, The Supreme Court ruled that "Title II abrogates sovereign immunity in cases where violations of the 8th Amendment are alleged. The 14th Amendment incorporates the 8th Amendment (that is, applies it to the states). Congress can enforce the 14th Amendment against the states "by creating private remedies against the States for actual violations" of its provisions, which can involve abrogating state sovereign immunity." "United States v. Georgia." Oyez. Accessed August 1, 2019. https://www.oyez.org/cases/2005/04-1203

In *University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001), the Supreme Court reaffirmed that Section 5 of the Fourteenth Amendment grants Congress the power to abrogate the States' Eleventh Amendment immunity to private damage suits. In assessing the validity of "Section 5 legislation reaching beyond the scope of Section 1's actual guarantees," the legislation "must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" Garrett, 531 U.S. at 365 (quoting City of Boerne v. Flores, 521 U.S. 507, 520 (1997)). This requires a three-step analysis: first, a court must "identify with some precision the scope of the constitutional right at issue," id.; second, the court must "examine whether Congress identified a history and pattern of unconstitutional discrimination by the States against the disabled," id. at 368; finally, the Court must assess whether the "rights and remedies created" by the statute were "designed to guarantee meaningful enforcement" of the constitutional rights that Congress determined the States were violating, id. at 372, 373.

Applying these principles, id. at 365, the Court in Garrett held that Congress did not validly abrogate States' Eleventh Amendment immunity to suits by private individuals for money damages under Title I of the ADA. The Court concluded that Congress had identified only "half a dozen" incidents of relevant conduct (i.e., potentially unconstitutional discrimination by States as employers against people with disabilities), id. at 369 and had not made a specific finding that discrimination in public sector employment was pervasive, id. at 371-372. Thus, the Court held, Congress did not assemble a sufficient basis to justify Title I's abrogation of Eleventh Amendment immunity for its prophylactic statutory remedies. Id. at 372.

The Supreme Court specifically reserved the question whether Title II's abrogation can be upheld as valid Section 5 legislation. The Supreme Court noted that Title II "has somewhat different remedial provisions from Title I," id. at 360 n.1, and that the legislative record for those activities governed by Title II was more extensive, see id. at 372 n.7. Less than a week after

deciding Garrett, the Supreme Court denied a petition for certiorari filed by California and let Dare v. California, 191 F.3d 1167 (1999), cert. denied, 121 S. Ct. 1187 (2001).

### *B) Congress identified ample evidence of a long history and a continuing problem of unconstitutional treatment of persons with disabilities by states and made express findings on the subject*

"Congress enacted Title II against a backdrop of pervasive unequal treatment of persons with disabilities in the administration of state services and programs, including systematic deprivations of fundamental rights." *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, (2004).

The historical experience that Title II reflects is also documented in this Honorable Court's cases, which have identified the unconstitutional treatment of disabled persons by the State of Louisiana agencies in a variety of settings, including unjustified commitment, and the abuse and neglect of persons committed to state mental health hospitals.

### *C) In United States v. Georgia, 546 U.S. 151 (2006), the Supreme Court unanimously went on to state that Title II validly abrogates state sovereign immunity. Id. at 159.*

Goodman, a paraplegic held in a Georgia state prison, sued Georgia in federal court for maintaining prison conditions that allegedly discriminated against disabled people and violated Title II of the Americans with Disabilities Act (ADA). Georgia claimed the 11th Amendment provided the state immunity from such suits. The district court ruled for Georgia, but the 11th Circuit reversed.

Before the 11th Circuit ruled in the case, the United States sued Georgia, arguing that the ADA's Title II abolished state sovereign immunity from monetary suits. Congress could do this, the U.S. argued, by exercising its 14th Amendment power to enforce equal protection. The question to the Supreme Court was whether Title II of the Americans with Disabilities Act of 1990 validly abrogate state sovereign immunity for suits by prisoners with disabilities challenging discrimination by

state prisons, and whether Title II is a proper exercise of Congress's power under Section 5 of the Fourteenth Amendment, as applied to the administration of prison systems.

In a unanimous decision authored by Justice Antonin Scalia, the Court ruled that Title II abrogates sovereign immunity in cases where violations of the 8th Amendment are alleged. The 14th Amendment incorporates the 8th Amendment (that is, applies it to the states). Congress can enforce the 14th Amendment against the states "by creating private remedies against the States for actual violations" of its provisions, which can involve abrogating state sovereign immunity. However, the Court did not address the question of whether Title II validly abrogates sovereign immunity when the 8th Amendment is not involved. "*United States v. Georgia*." Oyez. Accessed August 5, 2019 https://www.oyez.org/cases/2005/04-1203.

### D) *The Rehabilitation Act (Section 504) is a valid exercise of Congress's authority under the spending clause of the Constitution*

The Fifth Circuit's decision in *Bennet-Nelson v. Louisiana Board of Regents*, 431 F.3d 448 (5th Cir. 2005), is a similar case to this case, and in that case, two hearing impaired students sued under Title II of the ADA and Section 504 of the Rehabilitation Act alleging that Louisiana Tech University, an arm of the State of Louisiana denied them equal access to education by failing to provide certain educational aids and services. *Id.* at 449. The district court dismissed the suit based on Eleventh Amendment immunity. *Id.*

On appeal, the plaintiffs argued that the University had waived its immunity from suit under Section 504 by accepting federal funding, and that Congress had validly abrogated Eleventh Amendment immunity from suit under Title II of the ADA. *Id.* Addressing the first argument, the court found that the University had waived its Eleventh Amendment immunity as to the plaintiffs' claims under Section 504 because it was a recipient of federal financial assistance. Id. at 454. Turning to Title II, the court noted that the only material difference between the rights and remedies afforded plaintiffs under that statute and Section 504 lay in their respective causation

requirements, but that this difference was immaterial where the plaintiffs' claims were based on a failure to make reasonable accommodations for disabled individuals. Id. "Thus," the court concluded, "having already held that sovereign immunity does not bar the appellants' claim under Section 504, we need not address at this juncture the issue of abrogation under Title II of the ADA, because the rights and remedies under either are the same for purposes of this case." Id. at 455.

## II.   *The statute of limitations for claims under 42 U.S.C. § 1983.*

The statute of limitations is not barred because the retaliation occurred in February 2018, and Plaintiff's case was under consideration by the Provost until April 2018.

Respectfully submitted this 5th day of August, 2019.
By:

ESROM DEMEK, *Pro Se* Litigant
5959 Burbank Dr. Unit 1624
Baton Rouge, LA 70820
Phone: 571-306-9137 | email: edemek1@lsu.edu

## Certificate of Service

I do hereby certify that on August 5, 2019, a copy of the forgoing MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was filled manually with the Clerk of the Court. There are no non-CMF/ECF participants.

Esrom Demeke