U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED AUG 15 2019
CLERK

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ESROM DEMEKE, *Plaintiff,* v. BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY, and A&M COLLEGE, *ET AL.* *Defendants.* | Case Number: 19-114-BAJ-RLB Judge Brian A. Jackson Mag. Judge Richard L. Bourgeois, JR. |

**FIRST AMENDED COMPLAINT**

The Plaintiff, Esrom Demeke, (hereinafter "Plaintiff" or "Esrom") brings this action against Defendants, and asserts his causes of action as follows:

### INTRODUCTION

1. This is an action to remedy violations of the Plaintiff's rights under Title II of the Americans with Disabilities Act of 1990, as amended (the "ADA"), 42 U.S.C. § 12131, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq.*; and the Fourteenth Amendment, 42 U.S.C. § 1983.

1

2. Esrom was a fourth-year student at LSU's College of Engineering during the fall 2018 semester, and at all times relevant herein was, a resident of the State of Louisiana and is an adult qualified to bring suit.

3. Esrom has Attention-Deficit/Hyperactivity Disorder[1] ("ADHD") and is therefore substantially limited in the major activity of concentrating, reading, thinking and functions of the brain[2].

4. During the fall 2016 semester, Esrom registered with LSU's Office of Disability Services ("ODS") by providing the required medical documentation from his primary care physician. Esrom is, and at all times relevant herein was a qualified individual with a disability as defined under the ADA and its implementing regulations (42 U.S.C. § 12102; 28 C.F.R. § 36.104), and Section 504 and its implementing regulations (29 U.S.C. § 705(20) (A)-(B); 28 C.F.R. 41.32(b)).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1343(a)(3)&(4), for claims arising under the ADA and Section 504. Moreover, this Court has jurisdiction of the Plaintiff's

---

[1] ADHD includes: predominantly inattentive type, predominantly hyperactive-impulsive type, and combined type (where symptoms of the first two types are equally present) Centers for Disease Control and Prevention (CDC), Attention Deficit/Hyperactivity Disorder (ADHD), Facts About ADHD, (updated April 2016) ("CDC Facts About ADHD"), http://www.cdc.gov/ncbddd/adhd/facts.html.

[2] 42 U.S.C. § 12102(2).

claims arising from Constitutional rights violations, under the Fourteenth Amendment, 42 U.S.C. § 1983.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over claims arising under Louisiana law, including the LAPA claim.

7. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391, in that all of the claims and events giving rise to this action occurred in this district.

8. This Court has jurisdiction over plaintiff's claims for declaratory relief and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

### I) Plaintiff

9. Esrom is a citizen of both the United States and the Commonwealth of Virginia. Esrom is a *Pro Se* litigant.

### II) Defendants

10. Board of Supervisors of Louisiana State University and A&M College ("LSU") is a public entity within the meaning of Title II of the ADA, and LSU receives financial assistance from the federal government within the meaning of Section 504.

11. Dr. F. King Alexander ( "Dr. Alexander"), President and Chief Executive Officer of LSU. Dr. Alexander is sued individually and in his official capacity as President of LSU.

12. Dr. Stacia Haynie ("Dr. Haynie"), Executive Vice President

("EVP"), and Provost of LSU-Baton Rouge. Dr. Haynie is sued in her official capacity as the EVP and Provost of LSU-Baton Rouge.

13. Dr. Matt Lee ("Dr. Lee"), Vice Provost for Academic Programs and Support Services. Dr. Lee is sued individually and in his official capacity as Vice Provost of LSU-Baton Rouge.

14. Dr. Kurt Keppler, ("Dr. Keppler"), Vice President for Student Affairs at LSU-Baton Rouge. Dr. Keppler is sued individually and in his official capacity as the Vice President for Student Affairs.

15. Dr. Judy Wornat ("Dr. Wornat"), Dean of College of Engineering. Dr. Wornat is sued individually and in her official capacity as the Dean of LSU's College of Engineering.

16. Dr. Jonathan Sanders ("Dr. Sanders"), Director of LSU's Student Advocacy and Accountability ("SAA"). Dr. Sanders is sued individually and in his official capacity as the Director of SAA.

17. Ms. Rachel L. Champagne ("Ms. Champagne"), Assistant Director SAA. Ms. Champagne is sued individually and in her official capacity as the Assistant Director of Student Accountability.

18. Ms. Chelsie Bickel ("Ms. Bickel"), Assistant Director of SAA. Ms. Bickel is sued individually and in her official capacity as the Assistant Director of Student Accountability.

19. Ms. Dawn Sousa-Hearn ("Ms. Sousa-Hearn"), Associate Director- Accommodation Advocacy & Guidance, Office of Disability Services. Ms. Sousa-Hearn is sued individually and in her official capacity as the Associate Director of ODS.

4

20.     Dr. Mayank Tyagi (Dr. "Tyagi"), Associate Professor, College of Engineering. Dr. Tyagi is sued individually and in his official capacity.

21.     Defendants Does 1 to 10 are individuals currently not known to the Plaintiff and are believed to be involved in violating Plaintiff's Constitutional and Statutory Rights. Defendants Does 1 to 10 are sued individually and in their official capacities.

## GENERAL FACTUAL BACKGROUND

22.     Plaintiff was admitted to LSU's College of Engineering as a transfer student and started enrollment during the summer 2016 semester.

23.     On July 25, 2016, the Plaintiff received a diagnosis of Attention-Deficit/Hyperactivity Disorder ("ADHD") form his Primary Care Physician and began prescription medication treatment.

24.     During the Fall 2016 semester, the Plaintiff requested accommodation/modification and submitted medical documentation to ODS.

25.     Subsequently, LSU's Office of Disability Services ("ODS") approved plaintiff's request for the following accommodations[3]:

- Extended time for exams (time-and-a-half)
- Exams in a distracted-reduced environment

---

[3] Contrary to 34 C.F.R. §§ 104.4(b), 104.21-23, 104.37, 104.61, LSU's ODS group together accommodations and services in a blanket fashion to all students with ADHD. According to a guidance from the Department of Education, Office for Civil Rights, "reasonable modification is fact-dependent and requires a case-by-case analysis.", ("Dear Colleague Letter and Resource Guide on Students with ADHD"), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201607-504-adhd.pdf

26. On March 01, 2018, Esrom filed a complaint[4] with the U.S. Department of Education, Office for Civil Rights ("OCR") against Dr. Tyagi alleging discrimination and retaliation based on national origin, and disability.

27. The complaint alleges that Dr. Tyagi reported Esrom twice to Ms. Champagne (Assistant Director, Student Accountability) for academic misconduct with other twelve middle-eastern students who were accused of cheating on a final exam during the fall 2017 semester.

28. On December 11, 2017, Esrom received an email from Dr. Tyagi stating that he has been reported to SAA for academic misconduct.

29. On January 01, 2018, Esrom received a second email from Dr. Tyagi stating that he has been referred to SAA with other twelve middle-eastern students who were caught cheating on a final exam in December 2017.

30. Although Esrom was cleared from any wrongdoing in both instances, he was subjected to anxiety and mental anguish because of the accusations by Dr. Tyagi.

31. Esrom reported the incidents to his counselor and she contacted Dr. Tyagi.

32. On January 01, 2018, Esrom received an email from Dr. Tyagi stating

---

[4] On April 23, 2018, OCR dismissed Complaint # 06182141 citing the following reason:
"[u]nder OCR's Case Processing Manual (CPM), Section 108(g)(i), OCR will dismiss allegations of discrimination when the same or similar allegation(s) filed with OCR involve the same operative facts currently pending before another federal, state, or local civil rights enforcement agency or through a recipient's internal grievances. And OCR anticipates that all allegations will be investigated and that there will be a comparable resolution process pursuant to legal standards that are acceptable to OCR.

6

that he would not be allowed to take a final makeup exam. Moreover, Esrom believes that the action taken by Dr. Tyagi was in retaliation, and it is because Esrom voiced his concern regarding Dr. Tragi's discriminatory behavior.

33. Esrom believes that he was targeted for discrimination and retaliation because of his national-origin (middle-eastern).

34. On or around the same time, Esrom informed Dr. Wornat's office, the Provost[5], and Dr. Alexander's office regarding the discrimination and retaliation believing that LSU would investigate[6] the complaint.

35. OCR dismissed the complaint pursuant to OCR's policy and assuming that LSU would investigate the complaint. However, LSU did not investigate the complaint. Moreover, Esrom did not receive any response from LSU regarding the complaint.

36. On April 2018, Esrom filed a complaint with U.S. Department of Justice, Disability Rights Section ("DoJ") alleging that Ms. Sousa-Hearn and Dr. Tyagi refused to provide reasonable accommodations. DoJ referred the complaint to OCR on April 9, 2018. And, OCR opened the complaint for investigation.

37. On June 20, 2018, Ms. Sousa-Hearn reported Esrom to SAA alleging

---

[5] Dr. Richard Koubek, former LSU-Baton Rouge Provost.

[6] According to LSU's Permanent Memorandum -55, "Any individual who receives a [discrimination] complaint or becomes aware of a possible violation of this policy will immediately notify the Campus Office of Human Resource Management or individual responsible for the campus Human Resources function to obtain advice and assistance in responding to the complaint."

7

academic misconduct.

38. On July 2, 2018, Esrom filed a retaliation complaint with OCR alleging that Ms. Sousa-Hearn and Ms. Champagne retaliated against him because he sought to secure his rights as a student with a disability.

39. Ms. Champagne investigated the alleged incident and on July 10, 2018, found Esrom guilty[7] of violating LSU's Code of Student Conduct.

40. Ms. Champagne refused Esrom a due process, which is afforded to all LSU students as described in LSU's student disciplinary procedures.

41. Esrom was entitled to procedural protections during the disciplinary hearing because students facing disciplinary hearings at public colleges and universities have both liberty and property interests at stake.

42. Esrom refused to accept Ms. Champagne's determinations and appealed the case to a Hearing Panel.

43. A Hearing Panel decided to uphold Ms. Champagne's decision.

44. Esrom appealed the Panel's decision to LSU's Dean of Students.

45. On August 8, 2018, the Dean of Students decided to uphold the decision of the Panel and assigned the following punishments for the

---

[7] Ms. Champagne found Esrom guilty of violating LSU's Code of Student Conduct and assigned the following punishments:
    I)    A grade of "zero" for a test
    II)   Academic Transcript Notation that will carry a notation that reads "Academic Misconduct"
    III)  Disciplinary Probation with Restrictions
    IV)   Apology Letter
    V)    Ethics & Decision Making Course (EDMC)

alleged violations of LSU's Code of Student Conduct:

    I) Apology Letter
    II) Ethics & Decision Making Course (EDMC)

46. On August 8, 2018, Esrom sent the following email to the Dean of Students:

> Dr. Fuentes-Martin,
>
> Thank you for your email.
>
> I have received your decision, but I don't see anything regarding my grade. I'm just trying to see if there is any change because your letter doesn't talk about grade impact.
>
> Thank you!
>
> Esrom

47. On August 9, 2018, the Dean of Student returned Esrom's email and stated the following:

> Esrom,
>     The University Hearing Panel did not make a determination on the grade, therefore, I did not change the final grade determined by the faculty member.
> Dr. Fuentes-Martin

48. Esrom contacted SAA for clarification because he found discrepancies, and asked Ms. Champagne, Ms. Bickel and Dr. Sanders why the Dean was under the impression that a grade of "zero" on the test in question was not part of the determination reached by the Panel.

49. SAA stated that the Dean made a mistake[8].

---

[8] Plaintiff believes that the Dean was intentionally misled by SAA.

50. Esrom is not given any more explanation either from the Dean or SAA employees regarding the inconsistency.

51. Because of the alleged misconduct and a disciplinary notation in Esrom's academic record, he was not able to qualify for scholarships and other grants because the scholarship he applied requires an applicant to have a clean academic record, but Esrom's academic transcript has a disciplinary notation. As a result, opportunities afforded to other LSU students such as grants and internship opportunities were denied to Esrom.

52. Further, SAA blocked[9] Esrom from registering for classes because he refused to write an apology letter as a punishment.

53. Esrom refused to accept the alleged misconduct because he strongly believes that it is in retaliation for speaking against discrimination.

54. On October 22, 2018, Esrom requested ODS for additional accommodations such as 1) extended time for assignments and projects and 2) consideration for attendance.

55. ODS response to Esrom's additional accommodations request is as follows:

> Hi Esrom,
>
> The documentation we have on file currently does not support the need for neither extended time on out of class assignments nor consideration for absences.
>
> Please provide additional documentation from you medical provider, preferably by having our forms completed and

---

[9] SAA allowed Plaintiff to be able to register for classes after OCR intervened, and SAA agreed to rehear the plaintiff's appeal and case again.

> submitted, in order to be considered for such accommodations.
>
> Additionally, extended time on out of class assignments is not an accommodation we would add to your accommodation letter. If approved to receive extensions on out of class assignments, this would only be granted on a case by case basis. You would be responsible for informing me when you are in need of an extension and I would make the request on your behalf. Your instructor will determine the length of the extension. Being that I would need to make the request on your behalf, should you be granted such an accommodation, you are responsible for informing me of your need well before a day or two before the assignment is due. Just want to make you aware of how the accommodation works.

56. Esrom submitted additional medical documentation from his primary care physician showing additional diagnosis and a change in prescription medication dosage.

57. ODS refused additional accommodations after reviewing the medical documentation and stating the following as their reason:

    > Hi Esrom,
    >
    > Thank you for your email. The form you submitted only addresses your ADHD diagnosis, which we already have on file. I did read the doctor's visit notes you submitted, and if Dr. Graves or whomever else may be treating you for anxiety and depression could complete and submit the Psychological form located on our website, additional accommodations can be considered. We need to know functional limitations of those diagnoses, so if you could have our Psychological form completed in full, we can then consider your accommodation requests.
    >
    > Thank you

58. On October 31, 2018, Esrom sent the following email to ODS:

11

> Ms. Beverly,
>
> Based on my midterm exam results, I am failing all of my courses. I would like to request additional accommodations based on the original documentation I have on file with ODS.
> Thanks
>   Esrom

59. The response from ODS for Esrom's additional accommodations request was the following:

> Hi Esrom,
> I would highly suggest meeting with an academic advisor so they can help you develop a plan for the remainder of the semester. If you have serious health concerns that may be impeding your ability to pass your classes, I would talk with the advisor about a possible resignation, which will give you time to focus on your health.
>
> As you have been informed previously, we will need supporting documentation before considering your accommodation request. Please let me know if you have additional questions.

60. Esrom appealed the case to LSU's Title IX Coordinator. However, the appeal was rejected by the Coordinator stating that "additional documentation is required in order to initiate additional accommodations.

61. Because obtaining additional documentation[10] from a medical professional is expensive and time-consuming, Esrom picked up the document from his Primary Care Physician on a regularly scheduled visit.

62. Because of LSU's failure to provide reasonable accommodations,

---

[10] 28 CFR 36.309(iv) states that "Any request for documentation, if such documentation is required, is reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested"

12

Esrom was not able to equally and fully benefit from services and benefits provided to other LSU students.

63. As a result, Esrom withdrew a course and was unable to successfully complete all courses registered for Fall 2018 semester.

64. Esrom made the additional reasonable accommodations request because the accommodations granted to him by ODS was not as effective as those provided to other disabled students, and this was negatively affecting his grades.

65. Section 504 states that "services provided by the institution must be equally effective as those furnished to other similarly qualifying disabled students so that it provides every student with similar disability with an equal opportunity to achieve the same results, benefits, or achievements. And,

66. 34 C.F.R. § 104.44(c) states that "[i]n its course examinations or other procedures for evaluating students' academic achievement, a recipient to which this subpart applies shall provide such methods for evaluating the achievement of students who have a handicap that impairs sensory, manual, or speaking skills as will best ensure that the results of the evaluation represent the student's achievement in the course, rather than reflecting the student's impaired sensory, manual, or speaking skills (except where such skills are the factors that the test purports to measure).

67. Esrom's request for additional accommodations would have been appropriate to evaluate his achievement and his knowledge of the courses

because his request was for an extended time on exams, tests, and projects. And, these accommodations or modifications would not fundamentally alter the nature of the program, lower or waive essential academic requirements, or result in undue financial or administrative burdens to LSU.

68. The primary reason why Esrom requested these additional accommodations is that he was consistently unable to finish exams, tests, and assignments in the allocated time because of the disability he has, which is ADHD.

## CAUSE OF ACTION

### Count 1 – Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, *et seq.*)

### Plaintiff Against LSU

69. Plaintiff incorporates by reference all preceding paragraphs.
70. Title II of the ADA states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.
71. At all times relevant to this action, LSU was a public entity within the meaning of Title II of the ADA and provided a program, service, or activity to qualified individuals.

72. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities offered by LSU.

73. Through the acts and omissions of Defendant LSU and its agents and employees described herein, Defendant LSU has subjected Plaintiff to discrimination on the basis of disability in violation of Title II of the ADA. In addition, LSU failed to provide Plaintiff with reasonable accommodations. Moreover, as a public entity, LSU refused to modify policies, practices, and procedures to avoid discrimination against a student with disabilities.

74. A claim for failure to accommodate under the ADA has the following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations. Neely v. PSEG Tex., Ltd. P'ship, 735 F.3d 242, 247 (5th Cir.2013).

75. Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. §12133 and 42 U.S.C. § 12205, Plaintiff prays for judgment as set forth in the Prayer for Relief.

## Count 2 – Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).

### Plaintiff Against All Defendants

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Section 504 provides in pertinent part: "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance. . ." 29 U.S.C. § 794(a).

78. Plaintiff was at all times relevant herein a qualified individual with a disability within the meaning of Section 504 because he has a psychological impairment that substantially limits one or more major life activities. See 29 U.S.C. § 705(20)(B).

79. At all times relevant to this action Defendants were recipients of federal funding within the meaning of Section 504.

80. Through their acts and omissions described herein, Defendants have violated Section 504 by excluding Plaintiff from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services that Defendants provide to qualified individuals.

81. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. §794(a), Plaintiff prays for judgment as set forth below.

## Count 3 – Retaliation in violation of Section 504 of the Rehabilitation

### Plaintiff Against LSU

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Plaintiff submitted multiple complaints to the U.S. Department of Education and U.S. Department of Justice regarding disability discrimination by LSU. And LSU was aware of the complaints.

84. LSU retaliated against plaintiff by alleging pretextual disciplinary misconduct, which caused the plaintiff to lose financial benefits and scholarship funds.

## Count 4 – Breach of Contract

85. Plaintiff incorporates by reference all preceding paragraphs.

86. Defendants breached multiple provisions of the LSU's Policy Statements, Permanent Memorandum, and regulations.

87. Defendants have failed to perform the duties of which they contracted to assume in. La. Civil Code Art. 1994 states that an obligor is liable for the "damages caused by his failure to perform a conventional obligation." La. Civil Code Art. 2769 states that "If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his

contract."

88. In failing to conduct an investigation that complied with LSU's Policy Statement 26 ("PS-26") and Permanent Memorandum 55 ("PM-55'), Defendants breached the implied covenant of good faith and fair dealing that required them to act in good faith and to deal fairly so as not to destroy the benefit of the bargain for Plaintiff

89. Defendants here failed to provide an educational program in accordance with their own rules and procedures, thus breaching the contract between them and the plaintiff.

## Count 4 – Respondent Superior

## Plaintiff Against All Defendants

90. Plaintiff incorporates by reference all preceding paragraphs.

91. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of LSU. And,

92. Therefore, Defendants are liable as principals for all torts committed by their agents.

## PRAYER FOR RELIEF

93. Plaintiff requests a trial by jury.

94. Wherefore, Plaintiff requests judgment be entered against Defendants and that, the Court grants the following:

18

a) Injunctive relief against Defendants to allow Esrom to continue his studies at LSU College of Engineering;

b) Declaratory relief;

c) Judgment against Defendants for Plaintiff's asserted causes of action;

d) An award of compensatory and special damages.

e) An Award for such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

I hereby certify under penalty of perjury that the above petition is true to the best of my information, knowledge, and belief.

Esrom Demeke, *Pro Se* litigant.

August 15, 2019

5959 Burbank Dr 1624
Baton Rouge, LA 70820
572-306-9137
Edemek1@lsu.edu