U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
FILED OCT 10 2019
CLERK

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ESROM DEMEKE,<br><br>*Plaintiff,*<br><br>*v.*<br><br>BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY, and A&M COLLEGE, ET AL.<br><br>*Defendants.* | Case Number:<br>19-114-BAJ-RLB<br><br>Judge<br>Brian A. Jackson<br><br>Mag. Judge<br>Richard L. Bourgeois, JR.<br><br>Evidentiary Hearing Requested |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Plaintiff respectfully submits this memorandum of law in support of his motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and for expedited discovery in support of Plaintiff's motion for preliminary relief. Plaintiff relies upon his Complaint (Doc 1), First Amended Complaint (Doc 26), and the attached Declaration and Exhibits in support of this Motion.

The purpose of this motion is to ask this Honorable Court to begin to address and remedy the most glaring and urgent violation that is currently causing

irreparable harm to Plaintiff – the infringement of Plaintiff's constitutional right[1] by an entity of the State of Louisiana.

Plaintiff further seeks an Order directing the parties to begin expedited discovery in connection with Plaintiff's motion for preliminary relief, leading up to an evidentiary hearing at which time Plaintiffs will present relevant testimony and documents supporting such relief.

## PRELIMINARY STATEMENT

The Defendants'[2] (hereinafter "LSU" or "Defendants") pervasive violations of Plaintiff's and other qualified minority disabled students'[3] constitutional right and federal statues - the Equal Protection Clause of the Fourteenth Amendment, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12101, *et seq.* - have denied Plaintiff and others access to a public education because of their disabilities.

Defendants have denied Plaintiff benefits and services provided to non-minority LSU students with similar conditions and circumstances because of

[1] U.S. CONST. amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws").

[2] Board of Supervisors of Louisiana State University and A&M College, and the above-named LSU employees in their official and individual capacities. Exception is Stacia Haynie who is sued only in her official capacity as the Vice President and Provost of LSU-Baton Rouge.

[3] On May 20, 2019, Pursuant to the Louisiana Public Records Act § 44:1 et seq., Plaintiff submitted a request to President F. King Alexander (custodian of LSU's record as defined in R.S. 44:1(A)(3)) asking records related to students that received free medical evaluations for the purpose of validating students' requests for accommodations, however, LSU denied Plaintiff's request. The Plaintiff is informed and believes, and upon such information and belief, alleges that minority qualified students and international students have no access for free medical evaluations.

Plaintiff's national origin and race, subjecting Plaintiff to irreparable harm. In his Complaint (Doc. 1), and First Amended Complaint (Doc. 26), Plaintiff contends that LSU's conduct violates the Equal Protection Clause of the Fourteenth Amendment (Doc. 1, para 64 and Doc. 26, para 64).

Plaintiff and other qualified disabled minority students at LSU are currently being irreparably harmed because of LSU's abdication of its responsibilities to ensure that LSU's Office of Disability Services ("ODS") complies with the Equal Protection Clause of the Fourteenth Amendment, Section-504, and Title II.

If this Honorable Court grants Plaintiff's request for an evidentiary hearing, he will demonstrate that LSU, a State of Louisiana entity, violated the Equal Protection Clause of the Fourteenth Amendment by selectively providing funding for some LSU students in order to pay for expenses related to their medical evaluations, which is provided by LSU's on-campus Psychological Services Center ("PSC"). These evaluations are required by LSU in order to "obtain, at the university's expense, independent medical opinion concerning the disability for which the student seeks an academic accommodation/auxiliary aid, including additional suggestions or recommendations regarding reasonable academic accommodations/auxiliary aids and services."[4]

Defendants willfully ignored Plaintiff's pleas for similar benefit as provided to several other non-minority LSU students situated in similar conditions and

[4] https://www.lsu.edu/policies/ps/ps_26.pdf.

circumstances. Instead of providing the appropriate accommodations[5] as required by Section 504 and Title II, Defendants refused[6] Plaintiff's reasonable accommodations request and suggested to Plaintiff that he should consider withdrawing from LSU. Although Plaintiff's doctor's office directly faxed medical documents to ODS stating that Plaintiff is being treated for anxiety and major depressive disorder, Defendants refused Plaintiff's reasonable accommodation request. (Exhibit A – Page 1 to 7).

In general, Defendants are failing to meet their constitutional and statutory obligations, causing Plaintiff and other qualified disabled minority students immediate and irreparable harm. Plaintiff, a student with documented disabilities, has experienced significant difficulty in benefiting from reasonable accommodations and services provided by LSU as required by Section 504 and Title II. As a result, he suspended[7] his enrollment at LSU during the spring 2019 semester in order to bring this action against Defendants.

The Defendants are responsible for ensuring that LSU complies with constitutional and federal laws and qualified minority students with disabilities are not excluded. Currently, Plaintiff and other qualified minority students with disabilities are being systematically excluded from services provided by LSU, a public entity. The procedures implemented by Defendants in order to verify eligibility for

---

[5] Plaintiff's request for reasonable accommodations and modifications of policy includes 1) extra time for projects, 2) double time for exams, and 3) modification of attendance policy. These are reasonable requests at public colleges and universities.

[7] Plaintiff consecutively enrolled at LSU starting summer 2016, fall 2016, spring 2017, summer 2017, fall 2017, spring 2018, summer 2018, and fall 2018

accommodation requests violates the Equal Protection Clause, Section 504, and Title II for the following reasons:

1. LSU requires the Plaintiff and other qualified minority disabled students to go through an expensive medical evaluation usually not covered by health insurances, and even if covered by a health insurance, the deductible is too high to afford, however,

2. LSU offers all-expense paid on-campus medical evaluations for selected qualified disabled students and for newly admitted students (please see Exhibit B – Pages 3 to 11, an investigation report by U.S. Department of Education, Office for Civil Rights or "OCR").

3. LSU rejects medical evaluations from a Primary Care Doctor ("PCD"). Plaintiff was able to easily afford a medical evaluation from his PCD on one of his scheduled office visits because his health insurance covers the fees and the deductible is reasonable. Plaintiff was able to have his doctor's office directly fax the documentation to LSU, however, LSU rejected the documentation by stating "this is not enough". (see Exhibit - A, all pages).

4. LSU's documentation requirement procedure violates 35 C.F.R. § 130 (4)(i), (8), and (d), which states that

> i. A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
>
> ii. A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability

> or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered; and

5. LSU documentation requirement procedure for Plaintiff and other qualified minority disabled students is burdensome because these students are usually from low-income families, with no access to private health insurance, and international students.

6. "A university is prevented from employing unnecessarily burdensome proof-of-disability criteria that preclude or unnecessarily discourage individuals with disabilities from establishing that they are entitled to reasonable accommodation." Guckenberger v. Boston University, 974 F Supp 106, 135-136 (D. Mass. 1997).

7. LSU makes decisions regarding all accommodation requests based on the medical evaluation and recommendations from the evaluator. For this reason, Plaintiff and others are excluded and only receive the generic preset[8] minimum accommodations that is not considered individually based on how the student is impacted by the disability and the severity of the disability. For reference purposes,

Some immediate remedial steps, such as requiring Defendants to 1) provide, at LSU's expense, independent medical evaluation for Plaintiff and other qualified disabled students when LSU believes additional medical evaluation is necessary to

[8][e]ach situation must be considered individually to understand if and how the student is impacted by the described condition. Disability is defined by the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities, a record of such an impairment or being regarded as having such an impairment." There is no listing of covered impairments. Therefore, the salient question is not whether a given condition is a "disability," but how the condition impacts the student. https://www.ahead.org/professional-resources/accommodations/documentation.

verify accommodation requests by qualified disabled students, 2) when LSU denies medical evaluation reports presented by students for accommodation request purposes, LSU must ensure that these students are aware of the fact that LSU provides an on-campus free medical evaluations, 3) ensure that Plaintiff and all qualified disabled students who were denied accommodations because of documentation issues are properly notified about the medical evaluation services that can be provided to them at LSU's expense, 4) ensure that Plaintiff and all qualified disabled students who were denied accommodations because of documentation issues are properly identified and reimbursed for tuition and fees paid to LSU, and their academic records are corrected.

Remedying these violations comports with the public interest. In the last two decades, the number of students with disabilities on college campuses has doubled[9]. Students with disabilities face similar problems to those experienced by other students, except their problems are often compounded by unique factors that cause additional stress, such as lack of access to accommodations and/ or modifications that allow them to have equal access and participate on equal footing with students without disabilities; prejudice and discrimination; and the daily challenges of a disability[10].

[9] Hadley, W. M. "College Students with Disabilities: A Student Development Perspective." New Directions for Higher Education 154 (2011): 77–81.

[10] National Council on Disability (July 21, 2017) - https://ncd.gov/publications/2017/mental-health-college-campuses.

## ARGUMENT

### Plaintiff should be Granted Preliminary Relief

Preliminary injunctive relief is appropriate where the movant demonstrates: (i) a substantial likelihood of prevailing on the merits, (ii) a substantial threat of irreparable injury if the injunction is not granted, (iii) that the threatened injury outweighs the threatened harm to the nonmoving party, and (iv) that the injunction will not disserve the public interest. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003) (citation omitted).

Although "the purpose of a preliminary injunction is to preserve the status quo," the Court of Appeals for the Fifth Circuit has explained that "if the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). "The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Id.*

As discussed below, there are compelling reasons to alter the status quo, which is causing ongoing, irreparable injury to Plaintiff and other qualified disabled students who are not able to afford paying thousands of dollars for outside medical evaluation in order to meet LSU's documentation requirement.

### *A. Section 504 of the Rehabilitation Act.*

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against disabled individuals. 29 U.S.C. § 794(a); 2 see also D.A., 629 F.3d at 453 ("[Section] 504 . . . broadly prohibit[s] discrimination against disabled persons in federally assisted programs or activities.").

To state a claim for relief under Section 504, a plaintiff must allege that she or he was: (1) an "individual with a disability"; (2) "otherwise qualified" for the program; and (3) excluded from, denied the benefits of, or otherwise subjected to discrimination under the program "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Plaintiff has stated a claim for relief under Section 504 (Doc. 1 and Doc. 26) clearly showing that Defendants violated Section 504 by denying him reasonable accommodations[11], modifications of policy, and retaliated against him when he filed a complaint with OCR. Defendants here do not dispute that LSU has waived immunity from suit under Section 504 by accepting federal funding. See 42 U.S.C. §

[11] A failure to provide a reasonable accommodation is just one of several theories that can support a claim of disability discrimination under the Rehabilitation Act. Prewitt v. U.S. Postal Serv., 662 F.2d 292, 305 & n.19 (5th Cir. 1981 Unit A); Nunes v. Mass. Dep't of Correction, 766 F.3d 136, 144–45 & n.7 (1st Cir. 2014). On a motion to dismiss, a court "must examine the complaint to determine if the allegations provide for relief on any possible theory." Doss v. S. Cent. Bell Tel. Co., 834 F.2d 421, 424 (5th Cir. 1987) (emphasis added) (citations and internal quotation marks omitted); see also Johnson v. City of Shelby, 135 S. Ct. 346, 346 (2014); Homoki v. Conversion Servs., Inc., 717 F.3d 388, 402 (5th Cir. 2013) ("So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it fails to categorize correctly the legal theory giving rise to the claim."

2000d-7; Miller v. Tex. Tech Univ. Health Scis. Ctr., 421 F.3d 342 (5th Cir. 2005) (en banc); Pace v. Bogalusa City Sch. Bd., 403 F.3d 272 (5th Cir. 2005).

### *B. Title II of the Americans with Disabilities Act.*

The Defendants are ultimately responsible for ensuring that all students with disabilities receive the full protections and services guaranteed by federal law. Defendants have violated Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

LSU's motion for dismissal due to a lack of subject-matter jurisdiction based on Rule 12(b) (1) will fail because Title II validly abrogates LSU's Eleventh Amendment immunity. Congress may abrogate state sovereign immunity if it (1) "makes its intention to abrogate unmistakably clear in the language of the statute" and (2) "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003). The ADA contains a clear expression of Congress's intent to abrogate state immunity. Tennessee v. Lane, 541 U.S. 509, 518 (2004) (citing 42 U.S.C. § 12202).

To determine whether Title II of the ADA is a valid exercise of Congress's authority under § 5 of the Fourteenth Amendment, courts apply the three-part inquiry set forth by the Supreme Court in United States v. Georgia, 546 U.S. 151 (2006); see also Hale v. King, 642 F.3d 492, 497–98 (5th Cir. 2011) (per curium).

First, a court must determine "which aspects of the [s]tate's alleged conduct violated Title II." Georgia, 546 U.S. at 159. Here, the Plaintiff's ADA claim is based upon the same conduct underlying his Section 504 claim—i.e., <u>denial of reasonable accommodations</u> and violation of the <u>Equal Protection Clause of the Fourteenth Amendment</u>. The only material difference between Title II and Section 504 is that Title II contains a less demanding causation standard. See Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005). Because Plaintiff in his complaints stated a claim under Section 504, he respectfully requests this Honorable Court to conclude, for the purpose of *Georgia's* abrogation analysis, that the same conduct that violated Section 504 is also in violation of Title II.

At the second part of the *Georgia* test, the court must determine "to what extent such misconduct also violated the Fourteenth Amendment." 546 U.S. at 159. "If the [s]tate's conduct violated both Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Hale, 642 F.3d at 498. Plaintiff requests this Honorable Court to conclude the *Georgia's* abrogation analysis here (the second part) because Plaintiff in his complaints (Doc. 1 and Doc. 26) alleged that LSU's conduct violated the <u>Equal Protection Clause of the Fourteenth Amendment.</u>

## I. Plaintiff is Likely to Succeed on the Merits

In the Fifth Circuit, when analyzing the degree of success on the merits, courts "employ [] a sliding scale involving the balancing [of] the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of

success on the merits." McWaters v. Fed. Emergency Mgmt. Agency, 408 F. Supp. 2d 221, 228 (E.D. La. 2005).

Although a plaintiff seeking an injunction bears the burden of showing probability of success,

> [plaintiff] is not required to prove to a moral certainty that his is the only correct position. The prerequisite, as an absolute, is more negative than positive: one cannot obtain a preliminary injunction if he clearly will not prevail on the merits; however, that he is unable, in an abbreviated proceeding, to prove with certainty eventual success does not foreclose the possibility that temporary restraint may be appropriate. Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 180 (5th Cir. 1975) (emphasis added).

Hence, the Court of Appeals has recognized that "[i]n a preliminary injunction context, the movant need not prove his case." Lakedreams v. Taylor, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991). "A reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief." Casarez v. Val Verde Cnty., 957 F. Supp. 847, 858 (W.D. Tex. 1997). "[W]hen the other factors weigh in favor of an injunction, a showing of some likelihood of success on the merits will justify temporary injunctive relief." McWaters, 408 F. Supp. 2d at 228.

Here, Plaintiff is likely to succeed on his claims because he will demonstrate that the Defendants have deprived him of his rights in violation of the Equal Protection Clause, Section 504, and Title II.

## II. Plaintiffs Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction

Plaintiff suffers irreparable harm because of Defendants' Action - deprivation of a constitutional right "for even minimal periods of time, unquestionably constitutes irreparable harm." Elrod v. Burns, 427 U.S. 347, 373 (1976); see also Awad, 670 F.3d at 1131 ("Furthermore, when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citation omitted); Bonnell v. Lorenzo, 241 F.3d 800, 809 (6th Cir. 2001) ("[W]hen reviewing a motion for preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."); Quinly v. City of Prairie Village, 446 F.Supp.2d 1233, 1237-38 (D. Kan. 2006) (same). Plaintiff respectfully asks this Honorable Court to consider that Defendants' violation of the Equal Protection Clause constitutes irreparable harm and conclude that no further showing of irreparable injury is necessary.

## III. The Remedial Steps Sought by Plaintiff Will Begin Addressing This Harm

Section 504 and Title II directs the Court to "grant such relief as [it] determines is appropriate" to remedy violations of the statute. See 20 U.S.C. § 1415(e). The Supreme Court has explained that "[t]he ordinary meaning of the language . . . confers broad discretion on the [district] court. . . [T]he only possible interpretation is that the relief is to be 'appropriate' in light of the purpose of the Act." Sch. Comm. of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 369 (1985).

A "mandatory injunction directing school officials to provide educational services meeting these needs [of students with disabilities] would obviously constitute 'appropriate' relief." Hall v. Knott Cnty. Bd. of Educ., 941 F.2d 402, 406 (6th Cir. 1991). The Court may grant similar types of relief for violations of Section 504 and Title II. See, e.g., 42 U.S.C. § 12133 (remedies under Title VII available); United States v. Criminal Sheriff, Parish of Orleans, 19 F.3d 238, 239-40 (5th Cir. 1994) ("broad discretion to fashion remedies as the equities of a particular case compel").

## IV. Balance of Hardship Weighs in Plaintiffs' Favor

The balance of hardships in this case tips overwhelmingly in favor of Plaintiff. In the absence of an injunction, Plaintiffs will suffer a daily worsening of the irreparable harm of his constitutional right and federal statues on the basis of his national-origin, race and disability. See Morel v. Giuliani, 927 F. Supp. 622, 639 (S.D.N.Y. 1995) ("Injunctive relief is therefore warranted to prevent a worsening of the harms demonstrated by Plaintiff"). Providing statutorily granted special services to a [student] does not harm [defendant]; doing so is its function under state and federal law." John T. ex rel. Paul T. v. Pennsylvania, No. 98-CV-5781, 2000 WL 558582, at *8 (E.D. Pa. May 8, 2000).

In sum, any possible harm that the Defendants may suffer from complying with federal law does not outweigh the overwhelmingly negative impact their lack of compliance has on Plaintiff and other qualified students with disabilities.

## V. The Public Interest Favors Preliminary Injunctive Relief

Plaintiffs seek a preliminary injunction to require the Defendants to comply with federal law and to respect the constitutional rights of their citizens. "[T]he public interest always is served when public officials act within the bounds of the law and respect the rights of the citizens they serve." Nobby Lobby, Inc. v. City of Dall., 970 F.2d 82, 93 (5th Cir. 1992) (quoting case below, 767 F. Supp. 801, 821 (N.D. Tex. 1991)). There is no more clear expression of the public interest than constitutional and statutory language of the Fourteenth Amendment, Section 504, and Title II, and no better way to effectuate that interest than by directing the Defendants to respect their citizens' constitutional rights and federal laws "it is in the public interest to provide benefits to those entitled to them under the law." See John T. ex rel. Paul T. v. Pennsylvania, No. 98-CV-5781, 2000 WL 558582, at *8 (E.D. Pa. May 8, 2000). Accordingly, the public interest favors granting a preliminary injunction.

## The Court Should Order Expedited Discovery

This Court has the authority, pursuant to Rule 34 of the Federal Rules of Civil Procedure, to direct the parties to engage in expedited discovery in connection with Plaintiffs' preliminary injunction motion. See Providence Prop. & Cas. Ins. Co. v. PeapLease Corp., No. 06-CV-285, 2007 WL 2241492 (E.D. Tex. Aug. 03, 2007) (granting plaintiff's and counter-defendant's applications for preliminary injunction and motion to compel expedited discovery); Wright MedTech., Inc. v. Somers, 37 F. Supp. 2d 673, 679 (D.N.J. 1999) (parties conducted expedited discovery before the hearing on plaintiffs' application for a preliminary injunction barring plaintiffs'

former employee from working for a competitor). "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." Ellsworth Assoc., Inc. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996). Accelerated discovery is appropriate where "[f]urther development of the record before the preliminary injunction hearing will better enable the court to judge the parties' interests and respective chances for success on the merits." Educata Corp. v. Scientific Computers, Inc., 599 F. Supp. 1084, 1088 (D. Minn.), aff'd in part, rev'd in part on other grounds, 746 F.2d 429 (8th Cir. 1984).

Plaintiff seeks an evidentiary hearing on his motion at which he will present fact and documents in support of the preliminary relief sought herein. Plaintiff seeks limited discovery of critical documents in the possession of the Defendants and testimony of employees of the Defendants, which will demonstrate the violations alleged by Plaintiff, and the need for immediate remedial relief to address the ongoing irreparable harm, such as violation of the Equal Protection Clause of the Fourteenth Amendment and federal laws.

Plaintiff is prepared to work with the Defendants to arrive at an acceptable schedule for discovery and a hearing on Plaintiff's preliminary injunction motion.

## CONCLUSION

For all of the foregoing reasons, this Honorable Court should enter a preliminary injunction in the form of the Proposed Order attached hereto.

Respectfully Submitted,

Dated this 10th day of October, 2019.

I hereby certify under penalty of perjury that the above petition is true to the best of my information, knowledge, and belief.

Esrom Demeke, *pro se* litigant

5959 Burbank Dr. 1624
Baton Rouge, LA 70820
Phone: (571) 306-9137
Email: edemek1@lsu.edu

**CERTIFICATE OF SERVICE**

I Esrom Demeke do hereby certify that on October 10, 2019 a copy of the forgoing Motion was filed manually with the Clerk of Court. Defendants' counsel will be served through the CM/ECF system at the following email address

Sheri M. Morris – Email: SMorris@DaigleFisse.com
D. Stephen Brouillette – Email: CPeck@DaigleFisse.com
Christina B. Peck – Email: SBrouillette@DaigleFisse.com

Esrom Demeke

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ESROM DEMEKE,<br><br>*Plaintiff,*<br><br>*v.*<br><br>BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY, and A&M COLLEGE, ET AL.<br><br>*Defendants.* | Case Number:<br>19-114-BAJ-RLB<br><br>Judge<br>Brian A. Jackson<br><br>Mag. Judge<br>Richard L. Bourgeois, JR.<br><br>Evidentiary Hearing Requested |

## DECLARATION OF PLANTIFF ESROM DEMEKE

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. I am the Plaintiff in the above captioned lawsuit case number: 19-114-BAJ-RLB
2. Exhibit A pages 1 to 7 and Exhibit B pages 1 to 11 are the true and correct documents.

I declare under penalty of perjury, that the foregoing is true and correct

Esrom Demeke

October 10, 2019