UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ESROM DEMEKE                                                         CIVIL ACTION

VERSUS

BOARD OF SUPERVISORS OF                                   NO. 19-00114-BAJ-RLB
LOUISIANA STATE UNIVERSITY
AND A&M COLLEGE, ET AL.

### RULING AND ORDER

Before the Court are the following Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12: (1) Defendants F. King Alexander, Chelsie Bickel, Stacia Haynie, Kurt Keppler, Matt Lee, Jonathan Sanders, Dawn Sousa-Hearn, Mayank Tyagi, and Judy Wornat's **Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) (Doc. 30)**; (2) Defendant Louisiana State University and A&M College Board of Supervisors' **Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b) (Doc. 31)**; and (3) Defendant Rachel L. Champagne's **Motion To Dismiss Complaint And First Amended Complaint Pursuant To Rule 12(b)(6) (Doc. 41)**.[1]

---

[1] According to Plaintiff's First Amended Complaint, Defendants hold the following roles at LSU: (1) F. King Alexander is President and Chief Executive Officer of LSU (Doc. 26 at ¶ 11); (2) Dr. Stacia Haynie is Executive Vice President and Provost (*Id.* at ¶ 12); (3) Dr. Matt Lee is Vice Provost for Academic Programs and Support Services (*Id.* at ¶ 13); (4) Dr. Kurt Keppler is Vice President for Student Affairs (*Id.* at ¶ 14); (5) Dr. Judy Wornat is Dean of College of Engineering (*Id.* at ¶ 15); (6) Dr. Jonathon Sanders is Director of Student Advocacy and Accountability (*Id.* at ¶ 16); (7) Dr. Rachel L. Champagne is Assistant Director of Student Advocacy and Accountability (*Id.* at ¶ 17); (8) Chelsie Bickel is Assistant Director of Student Advocacy and Accountability (*Id.* at ¶ 18); (9) Dawn Sousa-Hearn is Associate Director of Accommodation Advocacy & Guidance, Office of Disability Services (*Id.* at ¶ 19); (10) Dr. Mayank Tyagi is Associate Professor in the College of Engineering (*Id.* at ¶ 20); and (11) "Does 1 to 10 are individuals

1

The Court has considered Plaintiff's Opposition to Defendants' previous Motions to Dismiss. (Doc. 23). Plaintiff did not oppose the instant Motions to Dismiss. (Doc. 30, Doc. 31, Doc. 41). For the reasons stated herein, Defendants' Motions are **GRANTED** and Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE.**

I. **RELEVANT BACKGROUND**

A. **Alleged Facts**

This action arises from a dispute between a Louisiana State University ("LSU") student, university officials, and the LSU Board of Supervisors regarding alleged discrimination based on disability and the University's alleged failure to provide reasonable accommodations to Plaintiff. (Doc. 26). Plaintiff seeks damages, injunctive relief, and declaratory relief to remedy alleged violations of his rights under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, *et. seq.*; Section 504 of the Rehabilitation Act of 1973, 28 U.S.C. § 794, *et. seq.*; and the Fourteenth Amendment, 42 U.S.C. § 1983. (*Id.* at ¶¶ 1, 94).

Plaintiff enrolled at LSU in the Summer semester of 2016. (*Id.* at ¶ 22). On July 25, 2016, Plaintiff's primary care physician diagnosed Plaintiff with Attention-Deficit/Hyperactivity Disorder ("ADHD"). (*Id.* at ¶ 23). During the Fall semester of 2016, Plaintiff requested accommodations from the LSU Office of Disability Services. (*Id.* at ¶ 24). The LSU Office of Disability Services

---

currently not known to the Plaintiff and are believed to be involved in violating Plaintiff's Constitutional and Statutory Rights." (*Id.* at ¶ 21).

2

approved Plaintiff's request for the following accommodations: (1) extended time for exams; and (2) exams in a distraction-reduced environment. (*Id.* at ¶ 25).

On December 11, 2017, Defendant Dr. Mayank Tyagi informed Plaintiff that he reported Plaintiff to the LSU Office of Student Advocacy and Accountability ("SAA") for academic misconduct. (*Id.* at ¶ 28). Plaintiff alleges that on January 1, 2018, he received an email from Dr. Tyagi stating that "he [had] been referred to SAA with other twelve middle-eastern [sic] students who were caught cheating on a final exam." (*Id.* at ¶ 29). Plaintiff was cleared from wrongdoing in both instances. (*Id.* at ¶ 30). Plaintiff alleges that Dr. Tyagi acted in retaliation because Plaintiff voiced concern regarding Dr. Tyagi's discriminatory behavior. (*Id.* at ¶ 32.). Plaintiff specifically claims he was targeted for discrimination and retaliation because of his national origin. (*Id.* at ¶ 33).

On or about January 1, 2018, Plaintiff informed the offices of Defendants Dr. Wornat and Dr. Alexander of the alleged discrimination. (*Id.* at ¶ 34). Plaintiff did not receive a response from LSU regarding his complaint. (*Id.* at ¶ 35). On March 1, 2018, Plaintiff filed a complaint with the U.S. Department of Education, Office of Civil Rights, alleging discrimination and retaliation based on national origin and disability by Dr. Tyagi. (*Id.* at ¶ 26). Plaintiff also filed a complaint with the U.S. Department of Justice, Disability Rights Section, alleging that Defendants Dr. Tyagi and Ms. Sousa-Hearn refused to provide Plaintiff reasonable accommodations. (*Id.* at ¶ 36). On April 9, 2018, the U.S. Department of Justice referred Plaintiff's complaint to the U.S. Department of Education, Office of Civil

3

Rights, which opened an investigation. (*Id.*).

On June 20, 2018, Sousa-Hearn reported Plaintiff for academic misconduct. (*Id.* at ¶ 37). On July 2, 2018, Plaintiff filed a retaliation complaint with the U.S. Department of Education, Office of Civil Rights, alleging that Defendants Sousa-Hearn and Ms. Champagne retaliated against him because he sought to secure his rights as a student with a disability. (*Id.* at ¶ 38). On July 10, 2018, Champagne found Plaintiff guilty of violating the LSU Code of Student Conduct due to academic misconduct. (*Id.* at ¶¶ 37, 39). Plaintiff appealed Champagne's determinations to a Hearing Panel, which upheld Champagne's decision. (*Id.* at ¶¶ 42–43). Plaintiff appealed the Hearing Panel's decision to the LSU Dean of Students. (*Id.* at ¶ 44). On August 8, 2018, the LSU Dean of Students upheld the Hearing Panel's decision. (*Id.* at ¶ 45).

On October 22, 2018, Plaintiff requested the following additional accommodations from the LSU Office of Disability Services: (1) extended time for assignments and projects; and (2) "consideration for attendance."[2] (*Id.* at ¶ 54). The LSU Office of Disability Services requested additional documentation from Plaintiff. (*Id.* at ¶ 55). Plaintiff submitted additional documentation, but the Office of Disability Services informed Plaintiff that such documentation was insufficient. (*Id.* at ¶ 56, 57). Plaintiff then appealed his case to the LSU Title IX Coordinator. (*Id.* at ¶ 60). The Title IX Coordinator rejected Plaintiff's appeal because Plaintiff failed to provide additional documentation required for the adjudication of the appeal.

---

[2] Plaintiff failed to define "consideration for attendance." (Doc. 26, ¶ 54).

(*Id.* at ¶ 60).

In a recent Status Report filed by Defendants on August 25, 2020, Defendants reported that the LSU ADA/Title II Coordinator denied Plaintiff's appeal of the LSU Office of Disability Services' decision to disallow additional accommodations to Plaintiff. (Doc. 48). Plaintiff's appeal was denied for lack of documentation. (*Id.*) The LSU ADA/Title II Coordinator informed Plaintiff that his request may be reconsidered if Plaintiff provided additional documentation. (Doc. 48). LSU asserts that Plaintiff has failed to provide the required documentation, and Plaintiff does not dispute this assertion. (Doc. 48).

### B. Procedural History

On February 22, 2019, Plaintiff filed suit against the Board of Supervisors of Louisiana State University and A&M College, F. King Alexander, Chelsie Bickel, Rachel L. Champagne, Stacia Haynie, Kurt Keppler, Matt Lee, Jonathan Sanders, Dawn Sousa-Hearn, Mayank Tyagi, Judy Wornat, and Does 1-10. (Doc. 1). On May 21, 2019, Plaintiff filed a Motion to Amend Complaint. (Doc. 10). The Court granted Plaintiff's Motion, allowing Plaintiff to amend his Complaint within the time frames provided in Federal Rule of Civil Procedure 15(a)(1). (Doc. 15).

On July 5, 2019, several Defendants filed Motions to Dismiss Pursuant to Federal Rule of Civil Procedure Rule 12(b).[3] (Doc. 19, Doc. 20). Plaintiff failed to timely amend his Complaint, and on August 8, 2019, the Court ordered Plaintiff to

---

[3] Defendants Board of Supervisors of Louisiana State University and A&M College, F. King Alexander, Chelsie Bickel, Stacia Haynie, Kurt Keppler, Matt Lee, Jonathan Sanders, Dawn Sousa-Hearn, Mayank Tyagi, and Judy Wornat filed Motions to Dismiss. (Doc. 19, Doc. 20).

5

file an Amended Complaint by August 15, 2019. (Doc. 24). On August 15, 2019, Plaintiff filed his First Amended Complaint. (Doc. 26).

On September 19, 2019, Defendants Board of Supervisors of Louisiana State University and A&M College, F. King Alexander, Chelsie Bickel, Stacia Haynie, Kurt Keppler, Matt Lee, Jonathan Sanders, Dawn Sousa-Hearn, Mayank Tyagi, and Judy Wornat filed Motions to Dismiss First Amended Complaint Pursuant to Rule 12(b). (Doc. 30, Doc. 31). The Court denied Defendants' original Motions to Dismiss (Doc. 19, Doc. 20) as moot. (Doc. 38). On February 21, 2020, Defendant Rachel L. Champagne filed a Motion to Dismiss Complaint and First Amended Complaint Pursuant to Rule 12(b)(6). (Doc. 41). Defendants' Motions to Dismiss are now before the Court. (Doc. 30, Doc. 31, Doc. 41).

## II. ANALYSIS

### A. Rule 12(b)(1) Standard

Defendants argue that the Court lacks subject matter jurisdiction to adjudicate this case. "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig*, 668 F.3d 281, 286 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) attack before addressing any challenge on the merits of the claims. *Id.*

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard

6

as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (holding that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

### B. Rule 12(b)(6) Standard

Alternatively, Defendants contend that Plaintiff's Amended Complaint must be dismissed for failure to state an actionable claim. A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### C. Discussion

#### i. Section 1983 Claims

##### a. LSU Board of Supervisors

Plaintiff generally seeks to "remedy violations of Plaintiff's rights under . . . the Fourteenth Amendment, 42 U.S.C. § 1983," but does not provide specific facts to support such alleged violations. (Doc. 26, ¶ 1). The LSU Board of Supervisors seeks dismissal on the grounds that Plaintiff's claims are barred by the Eleventh Amendment. (Doc. 31-1).

Section 1983 only provides a cause of action against a "person," acting under

8

color of state law, who deprives another person of any rights, privileges, or immunities secured by the Constitution and the laws of the United States. 42 U.S.C. § 1983. States and state agencies are not deemed to be a "person" for purposes of § 1983 claims. *Hyatt v. Sewell*, 197 F. App'x 370 (5th Cir. 2006) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Bos. v. Tanner*, 29 F. Supp. 2d 743, 747 (W.D. La. 1998) ("Based on this analysis and Fifth Circuit jurisprudence, the court finds that the Board of Supervisors is an arm of the State of Louisiana and as such, is entitled to the protections of the Eleventh Amendment."); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (Section 1983 claims against states and state agencies are proscribed due to the Eleventh Amendment, which renders states immune from suit in federal court). The LSU Board of Supervisors is not a person under § 1983. Accordingly, Plaintiff fails to state a plausible claim for relief against the LSU Board of Supervisors under § 1983. This claim will be dismissed.

### b. LSU Employees

A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different than a suit against the State itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The doctrine of *Ex parte Young*, however, provides an exception to this general rule by allowing plaintiffs to sue state officials for prospective injunctive relief to end a continuing violation of federal law. 209 U.S. 123 (1908); *see also Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 256 (5th Cir. 2005) (stating that "[t]he purpose of the doctrine of *Ex parte Young* is to

9

allow plaintiffs asserting federal law claims to circumvent the state's sovereign immunity from suit by suing state officers instead"); *Wiggins v. Stone*, 570 F. Supp. 1451, 1453 (M.D.La 1983) (stating "it is clear that injunctive relief may be granted against an official of the state under circumstances where the state itself is immune from liability"). Even so, Plaintiff has failed to allege facts indicating a continuing violation of federal law for which he may be entitled to prospective injunctive relief. As such, Plaintiff fails to state a plausible claim for relief against the LSU employees under § 1983. This claim will be dismissed.

### ii. Americans with Disabilities Act and Rehabilitation Act Claims

Plaintiff's Complaint alleges violations of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. (Doc. 26). "The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). Title II, in particular, "focuses on disability discrimination in the provision of public services." *Frame*, 657 F.3d at 224. Section 504 of the RA complements Title II by "prohibit[ing] disability discrimination by recipients of federal funding." *Id.* "A primary purpose of Title II was to extend the reach of the Rehabilitation Act to all public entities, regardless of whether or not they receive federal funds." *Wagner v. Texas A & M Univ.*, 939 F. Supp. 1297, 1309 (S.D. Tex. 1996) (citation omitted).

10

These laws "are judged under the same legal standards, and the same remedies are available under both." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). Accordingly, although this Court focuses primarily on Title II, the Court's analysis is informed by the Rehabilitation Act, and the Court's holding applies to both statutes. *See Frame*, 657 F.3d at 224.

Because Defendants are entitled to sovereign immunity under the Eleventh Amendment, the Court turns to whether Congress, in passing Title II, validly abrogated Eleventh Amendment sovereign immunity in this case. *See Smith v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 372 F. Supp. 3d 431, 448–49 (E.D. La. 2019). The Supreme Court has held that Title II of the ADA "validly abrogates state sovereign immunity under the Fourteenth Amendment in certain cases." *Wells v. Thaler*, 460 F. App'x 303, 311 (5th Cir. 2012) (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

In *United States v. Georgia*, the Supreme Court established a three-part test to determine whether immunity is validly abrogated in a given case. *Wells*, 460 F. App'x at 311 (citing *Georgia*, 546 U.S. at 159). To make this determination, a court must consider the following on a claim-by-claim basis: (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

11

*Georgia*, 546 U.S. at 159.

First, the Court will consider "which aspects of the State's alleged conduct violated Title II." *Id.* "[T]his inquiry is often addressed on motion to dismiss, and thus phrased in terms of whether the plaintiff sufficiently 'alleged' conduct violating Title II and the Fourteenth Amendment." *Wells*, 460 F. App'x at 311. The alleged Title II violations in this case relate to the following: (1) failure to provide additional accommodations to a student with ADHD apart from extended time for exams and exams in a distraction-reduced environment; (2) discrimination on the basis of disability; and (3) failure to modify policies, practices, and procedures to avoid discrimination against a student with disabilities. (Doc. 26, ¶ 73).

In *Maples v. University of Texas Medical Branch at Galveston*, plaintiff alleged that her University failed to accommodate her ADHD in violation of the ADA and RA. 524 F. App'x 93, 93 (5th Cir. 2013). The *Maples* plaintiff requested accommodations from the University based on her ADHD. *Id.* The University granted the *Maples* plaintiff extended time for examinations and a "distraction free environment" in which to take exams. *Id.* The Fifth Circuit found this accommodation reasonable.[4] *Id.* at 93–94.

Here, Plaintiff was similarly diagnosed with ADHD. (Doc. 26 at ¶ 23). The University provided Plaintiff extended time for examinations and a "distraction-reduced" environment in which to take exams. (*Id.* at ¶ 25). As the facts are virtually equivalent to *Maples*, this Court finds that the University provided

---

[4] The Fifth Circuit noted that in finding the accommodation reasonable, the court did not determine whether plaintiff was disabled for purposes of the ADA and RA.

12

Plaintiff with reasonable accommodations in this case. Not only did the University provide Plaintiff reasonable accommodations, but the University informed Plaintiff that it may consider providing Plaintiff additional accommodations if Plaintiff submitted the required documentation. (Doc. 48). The University reported that Plaintiff failed to provide the required documentation, and Plaintiff does not dispute this assertion. (*Id.*).

Plaintiff also alleges discrimination based on disability. (Doc. 26, ¶ 73). The only facts Plaintiff asserts regarding discrimination, however, are based on Plaintiff's national origin. (*Id.* at ¶ 33 ("[Plaintiff] believes that he was targeted for discrimination and retaliation because of his national-origin (middle-eastern).")). Alleged discrimination based on national origin does not fall under the ADA.

Finally, Plaintiff alleges that the University failed to modify policies, practices, and procedures to avoid discrimination against a student with disabilities. (Doc. 26, ¶ 73). Plaintiff's own Complaint, however, describes a number of policies, practices, and procedures in place to avoid discrimination against a student with disabilities. (Doc. 26, ¶ 24, 25, 34, 40, 42, 43, 44, 45, 46, 47, 55, 57, 59, 60). The Court finds this claim to be without merit.

Because Plaintiff has not identified state conduct which violated Title II of the ADA, this Court will not proceed to the second prong of the *Georgia* test to determine whether Defendants' actions violated the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). Plaintiff has failed to state a plausible claim for relief under the ADA or RA. Plaintiff's ADA and RA claims will be

13

dismissed.

### iii. Breach of Contract Claim

Plaintiff alleges that Defendants breached a contract between Plaintiff and Defendants by failing to comply with LSU Policy Statement 26 and LSU Permanent Memorandum 55.[5] (Doc. 26, ¶ 86, 88, 89). In *van Heerden v. Bd. of Sup'rs of La. State Univ. & Agr. & Mech. Coll.*, this Court found that LSU Policy Statements did not form part of plaintiff's contract with the University. No. 3:10-CV-155-JJB-CN, 2011 WL 5008410, at *13 (M.D. La. Oct. 20, 2011). This Court noted, "Louisiana jurisprudence on the non-contractual nature of faculty handbooks and university policies confirms this conclusion." *Id.* (citing *Stanton v. Tulane Univ.*, 777 So. 2d 1242 (La. App. 4th Cir. 2001)). Accordingly, LSU Policy Statement 26 and Permanent Memorandum 55 do not form a contract between Plaintiff and Defendants. Plaintiff's breach of contract claim has no merit and will be dismissed.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motions to Dismiss First Amended Complaint (Doc. 30, Doc. 31, Doc. 41) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants F. King Alexander, Chelsie Bickel, Stacia Haynie, Kurt Keppler, Matt Lee, Jonathan Sanders, Dawn Sousa-Hearn, Mayank Tyagi, and Judy Wornat,

---

[5] LSU Policy Statement 26 describes the University's policy on disability service, duties, and compliance. LSU Permanent Memorandum 55 describes the University's equal opportunity policy.

14

Board of Supervisors of Louisiana State University and A&M College, and Rachel L. Champagne are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff show cause, in writing, within ten days of the issuance of this Ruling and Order, why a final judgment dismissing all claims against "Does 1 to 10," "individuals currently not known to [] Plaintiff," should not be entered. (Doc. 26, ¶ 21).

Baton Rouge, Louisiana, this 29th day of October, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**